Robin G. MARKS and Ronald
S. Marks, Plaintiffs,

v.

OUTBOARD MARINE CORP., Bayliner Marine Corp. aka U.S. Marine/Bayliner, Brunswick Co., Summit North Yacht Service Center, McDaniel Yacht Basin, Inc., Stafford Transmissions/Auto, Marine SE, ABC Companies 1–5, and XYZ Corporations 1–5, Defendants.

No. 94–CV–2820 (JBS).

United States District Court,
D. New Jersey.

May 2, 1997.

---

Anne S. Cantwell, Weinberg, McCormick, Chatzinoff & Paul, Haddonfield, NJ, for trustee James J. Cain.

Edward R. Petkevis, Roebling, NJ, for plaintiffs.

James W. Scott, Jr., Kenney & Kearney, Cherry Hill, NJ for defendant Stafford Transmission/Auto Marine Service.

John P. Flanagan, Barry & McMoran, Newark, NJ, for defendant Bayliner Marine Corp. and defendant Brunswick Co.

Douglas M. Joyce, Cahill, Wilinski & Rhodes, Haddonfield, NJ, for defendant Outboard Marine Corp.

Epiphany McGuigan, Cooper, Perskie, April, Niedelman, Wagenheim & Levenson, Atlantic City, NJ for defendant McDaniel Yacht Basin, Inc.

J. Paul Mullen, Lord & Whip, Baltimore, MD, for defendant Summit North Yacht Service Center.

## OPINION

SIMANDLE, District Judge.

This is a personal injury action in which plaintiffs allege that defendants' negligence proximately caused a 1992 boating accident involving the plaintiffs. This court previously transferred this case to the District of Maryland, without objection from plaintiffs, pursuant to 28 U.S.C. § 1404(a). One of the plaintiffs, Robin G. Marks, has since filed in this District a petition for bankruptcy protection under Chapter 7 of the Bankruptcy Code.

Ms. Marks' bankruptcy trustee now moves pursuant to 28 U.S.C. § 157(b)(5) to transfer the Maryland case back to this District, so that plaintiffs' personal injury action and the bankruptcy action may be adjudicated in the same district. The issue presented is whether, in the interests of justice under the circumstances of this case, this court should abstain, pursuant to 28 U.S.C. § 1334(c)(1), from ordering the transfer of the Maryland case to New Jersey that is otherwise required by 28 U.S.C. § 157(b)(5). For the reasons set forth below, the trustee's motion will be denied, because abstention is appropriate.

### I. *Background*

The specific factual allegations underlying plaintiffs' personal injury case are of minimal relevance for purposes of the present motion. It suffices to note that plaintiff Robin Marks was injured in a boating accident off the coast of Delaware in July 1992. Plaintiffs, who are New Jersey residents, allege that a defect in their boat caused Ms. Marks' injuries, and that these defendants are responsible for those injuries by virtue of defendants'

service, sale, or production of the vessel, which was owned by plaintiffs and maintained and operated in Delaware's waters.

Plaintiffs filed their complaint with this court in January 1995 (the "New Jersey action"), under this court's diversity jurisdiction. (Flanagan Certif. Ex. 1). In June of 1995, while plaintiffs' case was still pending before me, plaintiffs filed a second complaint raising similar allegations in the District of Maryland (the "Maryland action"). (*Id.* Ex. 2). On January 19, 1996, upon motion of defendants, I signed an Order transferring plaintiffs' New Jersey action to the District of Maryland, pursuant to 28 U.S.C. § 1404(a). (*Id.* Ex. 3). Plaintiffs did not oppose the transfer. (*Id.*). The Honorable Marvin J. Garbis, U.S.D.J., who was assigned the transferred case in the District of Maryland, dismissed the transferred case as duplicative of the action already pending in that district.[1] (*Id.* Ex. 6).

It has been almost two years since plaintiffs began litigating their claims against defendants in the District of Maryland. The record reveals that during that two-year period, plaintiffs have failed to abide by various orders issued by Judge Garbis, who has presided over plaintiff's case. For example, after plaintiffs' previous attorney withdrew from his representation of plaintiffs, Judge Garbis ordered plaintiffs to retain new counsel or announce their intention to proceed *pro se* by January 20, 1996. (Flanagan Certif. Ex. 5). Plaintiffs failed to comply, and the court reluctantly agreed to extend the deadline. (*Id.* Ex. 6). Eventually, plaintiffs retained new counsel.

Plaintiffs were similarly dilatory in responding to Judge Garbis' discovery orders. Judge Garbis initially set a discovery deadline in the case of March 27, 1996. (*Id.* Ex. 4). Plaintiffs failed, however, to respond to defendants' discovery requests in a timely manner. (Burch Certif. ¶ 2). It was not until June 1996, when defendants filed a motion for sanctions, that plaintiffs filed responses to defendants' discovery requests.

Plaintiffs did not, moreover, produce any materials relating to expert witnesses at that time. Judge Garbis ordered plaintiffs to advise defendants of the identity of their expert witnesses and make such witnesses available for depositions by October 31, 1996. (*Id.* Ex. 7). The October deadline passed, however, without plaintiffs having supplied defendants with any information concerning expert witnesses. (Burch Certif. ¶ 3).

In December 1996, defendants began filing motions for summary judgment, which were based primarily on the grounds that plaintiffs could not prevail on their substantive claims without the benefit of expert testimony. Plaintiffs responded by requesting more time to retain an expert. Plaintiff Robin Marks revealed at that time that she had recently filed a petition for bankruptcy protection under Chapter 13 of the Bankruptcy Code, and explained that her bankruptcy case had interfered with plaintiffs' ability to prosecute their personal injury action. However, Ms. Marks soon voluntarily dismissed her bankruptcy petition. In moving to dismiss the petition, she stated that she had "decided to attempt to overcome her financial difficulties outside the purview of the Federal Bankruptcy Court." (Flanagan Certif. Ex. 11).

While defendants' summary judgment motions and plaintiffs' request to extend discovery deadlines were still pending, plaintiffs apparently began to perceive that the District of Maryland would not be an entirely hospitable forum in which to litigate their claims. Plaintiffs thus asked Judge Garbis to reinstate the dismissed New Jersey action, and transfer that case as well as the Maryland action back to the District of New Jersey. Judge Garbis denied the transfer motion in summary fashion. He noted, "The effect of the transfer would be to reverse a transfer to which the Plaintiffs consented, render moot the Plaintiffs' deadline problems, and require most Defendants to proceed to litigate the case in New Jersey after

---

**1.** Because this docket was closed and the case transferred in January 1996, it was improper for the movant—the Trustee in Bankruptcy—to seek retransfer under the old docket number. After transfer to Maryland, this docket was also closed in Maryland, as noted. Rather than dismissing this motion on this technical ground and imperiling the ongoing Maryland case by stirring the already choppy waters, the merits of the trustee's motion will be reached.

taking it through discovery in Maryland." (*Id.* Ex. 14).

During a subsequent conference call, plaintiffs' attorney represented to Judge Garbis that he might attempt to effect a transfer of plaintiffs' personal injury case to New Jersey through the filing of a bankruptcy petition in that district. (Burch Certif. ¶ 4). Shortly thereafter, on February 28, 1997, plaintiffs filed such a petition for bankruptcy protection under Chapter 7 of the Bankruptcy Code. After becoming aware of the bankruptcy filing, Judge Garbis held another telephone conference call, during which plaintiffs' attorney confirmed that the primary and perhaps sole motivation behind the bankruptcy filing was to ensure that plaintiffs' personal injury suit would be transferred to New Jersey. (*Id.* ¶ 5). Judge Garbis responded by issuing an order stating that until the Maryland court received further notice, plaintiffs' personal injury suit would proceed in Maryland as scheduled. He explained, "It appears that [plaintiffs] are seeking to avoid having this Court rule upon pending motions.... Whether the bankruptcy filing is effective to achieve [plaintiffs'] objectives will be determined in due course. For the present this Court has jurisdiction over the law suit." (Flanagan Certif. Ex. 19). A week later, plaintiffs' bankruptcy trustee filed in the District of New Jersey the present motion for this court to assert jurisdiction over plaintiffs' personal injury action.

Judge Garbis proceeded to hear oral argument on the pending summary judgment and discovery motions. During the course of that hearing, Judge Garbis made clear his views on the course of action adopted by plaintiffs throughout this litigation. He informed plaintiffs' counsel:

[F]rankly I think that what you are trying to do with this bankruptcy maneuver is in such total bad faith.... I am having a hard time seeing how you are entitled to start this lawsuit over to do things that manifestly should have been done and could have been done.... If you are able to go back to New Jersey and have a New Jersey court decide that a case once transferred here is going back to New Jersey, pulling Maryland litigants with it because you screwed up on deadlines and don't want to face the consequences, then that is what will happen, but I am having a hard time seeing how ... you should be able to reopen discovery.

(*Id.* Ex. 24 at 61–62). Nonetheless, Judge Garbis agreed to extend plaintiffs' deadline for designating an expert witness. (*Id.* Ex. 23). Also, while Judge Garbis granted summary judgment in favor of defendants as to certain issues raised by the complaint (*Id.* Ex. 15), much of the relief sought by the defendants was denied without prejudice to be re-argued following the completion of discovery. (*Id.* Ex. 23). Thus, at the time this motion to transfer comes before me, this case is proceeding in due course in the District of Maryland and is nearing the end of the pretrial stage.[2]

## II. *Discussion*

The trustee's motion to transfer is governed, in part, by 28 U.S.C. § 157, which provides:

(a) Each district court may provide that any or all cases ... related to a case under [the bankruptcy code] shall be referred to the bankruptcy judges for the district.

. . . .

(b)(5) *The district court shall order that personal injury tort ... claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.*

(Emphasis added). By its plain language, this provision confers on district court judges who have jurisdiction over a bankruptcy case the authority to transfer the venue of related

---

**2.** In a letter dated March 25, 1997, sent by this court to counsel, I noted that I would refrain from ruling on the trustee's transfer motion until the bankruptcy court ruled on defendants' motion to dismiss Ms. Marks' bankruptcy petition. The bankruptcy court denied that motion to dismiss on April 7, 1997. Thereafter, plenary briefing was received from the trustee and from all defendants in the Maryland action, each of whom opposes transfer to New Jersey.

tort cases involving the debtor. Specifically, such tort cases may be transferred to the district in which the tort claim arose or to the district in which the bankruptcy case is pending. The purpose of this provision is "to centralize the administration of the [debtor's] estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.'" *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 1011 (4th Cir.1986) (quoting 130 Cong. Rec. H. 7492, June 29, 1984).

■ Although section 157(b)(5)'s use of the word "shall" appears to require the district judge with jurisdiction over the bankruptcy petition to order the appropriate transfer of all related tort cases, a second statutory provision indicates that the district judge has the discretionary authority to abstain from ordering such a transfer. Specifically, 28 U.S.C. § 1334(c)(1) states:

> *Nothing in this section prevents a district court in the interest of justice,* or in the interest of comity with State courts or respect for State law, *from abstaining from hearing a particular proceeding arising under [the bankruptcy code] or arising in or related to a case under [the bankruptcy code].*

(Emphasis added). Federal courts have uniformly held that this provision permits district court judges to abstain from exercising the authority granted by 28 U.S.C. § 157(b)(5), where such abstention would be in the interest of justice. *See, e.g., In re Apex Oil Co.,* 980 F.2d 1150, 1152–53 (8th Cir.1992); *In re Pan American Corp.,* 950 F.2d 839, 844 (2d Cir.1991); *In re White Motor Credit,* 761 F.2d 270, 273 (6th Cir. 1985). These courts closely scrutinized the legislative history of section 157(b)(5) and section 1334(c)(1), and concluded that Congress expected district courts to follow these steps in ruling on section 157(b)(5) transfer motions:

> The district judge [sh]ould first decide whether it should leave the cases with respect to which claims have been filed in the bankruptcy court in the courts in which they are pending and then, if it decides against this course, the district court must try the cases itself or send

them to the federal court for the district in which they arose.

*In re White Motor Credit,* 761 F.2d at 273 (emphasis added).

■ In this case, there are compelling reasons for the court to exercise its discretion to abstain from ordering a transfer of plaintiffs' pending tort action. First, the court notes that this case has almost reached the end of the pretrial process under the auspices of Judge Garbis in the District of Maryland. In his two years of overseeing this litigation, Judge Garbis has ruled on various motions and has necessarily become familiar with the factual and legal issues that remain in dispute. The goal of judicial economy that is at the heart of section 157(b)(5) would be thwarted if the court were to transfer this case back to this District and compel each of the parties to retain New Jersey counsel at a time when the case appears to be so close to its final resolution elsewhere.

Second, if the court were to grant the trustee's transfer request, the court would be rewarding the plaintiffs' blatant attempts to forum shop and to escape the perceived consequences of their failure to conduct themselves properly while litigating in the District of Maryland. Indeed, plaintiffs have admitted that Ms. Marks' primary purpose in filing for Chapter 7 bankruptcy protection was to achieve a transfer of plaintiffs' personal injury action to this District. (Burch Certif. ¶ 5). That assertion is corroborated by the fact that Ms. Marks had filed an earlier Chapter 13 bankruptcy petition just over a year ago, but had decided to dismiss it and attempt to restructure her finances without the aid of the courts. (Flanagan Certif. ¶ 11). It was only when plaintiffs began to perceive Judge Garbis' frustration with plaintiffs' failure to abide by various court-imposed deadlines that Ms. Marks filed a second bankruptcy petition in order to divest Judge Garbis of jurisdiction over plaintiffs' claims. It was no mere coincidence that this second petition was filed two weeks after Judge Garbis denied plaintiffs' motion to transfer. We need not decide whether debtor Robin Marks has committed an abuse of the bankruptcy process through this an unabashed attempt to sidestep Judge Garbis' denial of plaintiffs'

motion to transfer, and we refrain from doing so in light of our Bankruptcy Court's decision to deny dismissal of debtor's Chapter 7 petition on April 7, 1997.

In response to arguments such as these, the trustee asserts that plaintiffs and their witnesses reside in New Jersey, and that New Jersey would therefore be a more convenient forum for trial in this case. Even assuming that convenience is a relevant consideration in ruling on a 28 U.S.C. § 157(b)(5) motion to transfer, plaintiffs' arguments are not persuasive in view of the fact that plaintiffs themselves originally filed the complaint in Maryland and did not object when plaintiffs' similar New Jersey action was transferred to Maryland in January 1996. The cause of action did not arise in New Jersey. It is apparent that litigating in Maryland became inconvenient for plaintiffs only after they found that their failure to abide by court-ordered deadlines in that forum of their own choosing would not be tolerated. Judge Garbis has been quite patient with plaintiffs' derelictions and has put a final schedule into place to conclude the case.

It is apparent that it is in the interests of justice, pursuant to 28 U.S.C. § 1334(c)(1), for this court to abstain from hearing this Chapter 7 debtor's tort suit, where that suit is on the verge of trial following a lengthy pretrial process in the place of debtor/plaintiffs' choosing, the District of Maryland. The debtor's Chapter 7 petition will continue to be administered in the United States Bankruptcy Court for the District of New Jersey, and this court foresees no impediment to our Bankruptcy Court's ability or authority to administer the Chapter 7 proceeding caused by the fact of plaintiffs' tort suit in Maryland.

For these reasons and in the interest of justice, the court will abstain from ordering that plaintiffs' personal injury suit be transferred to this District or any other. *See* 28 U.S.C. § 1334(c)(1). The accompanying Order is entered.

### *ORDER*

This matter having come before the court upon the motion of plaintiffs' bankruptcy trustee, requesting that this court order a transfer of this case from the District of Maryland to the District of New Jersey, pursuant to 28 U.S.C. § 157(b)(5); and the court having considered the submissions of the parties; and for the reasons stated in the Opinion of today's date;

IT IS this 2nd day of May 1997 hereby

ORDERED that the trustee's motion to transfer is hereby *DENIED*.